BOOTH, Judge.
The State Exchange Bank (Bank) appeals the entry of partial summary judgment in favor of Employee Fringe Benefits, Inc. (EFB) as to Count II of EFB’s complaint and Counts I, II, and III of the Bank’s counterclaim. The entry of partial summary judgment disposes of all claims between EFB and the Bank.
The issue presented is whether a life insurance policy on the life of Forrest Jefferson Harris, Jr. (deceased)[1] was assigned as collateral for indebtedness of Hidden Hills North Development Company (Hidden Hills) or for indebtedness of Harris.
EFB sued Great Southern Life Insurance Company (Great Southern) and the Bank seeking, in part, a judgment against Great Southern for all monies due under an accumulator whole life insurance policy insuring the life of Harris and declaratory judgment that the Bank was not entitled to any of the proceeds from the above-mentioned policy. The Bank counterclaimed seeking, in part, reformation of the collateral assignment of policy on the basis of mutual mistake (Count I) and fraud and/or misrepresentation (Count II), and demanding judgment against EFB for breach of agreement to properly furnish the Bank the in *248 surance required to collateralize Harris’ line of credit[2] (Count III).
The policy which insured the Harris’ life in the amount of $100,000 was obtained from Great Southern and named Hidden Hills owner and beneficiary. Hidden Hills was wholly owned by Ronald B. Garelick (deceased).[3] Garelick was also general agent for Great Southern and owner of EFB, an insurance agency. The policy in question was collaterally assigned by the “undersigned policyowner” to the Bank “to be held as collateral security for any and all liabilities of the undersigned to the As-signee.” The form was supplied by EFB. The collateral assignment expressly “DOES NOT EFFECT A CHANGE OF BENEFICIARY.”
Critical to the determination of this case are the signatures affixed to the collateral assignment of policy, which are as follows: [4]
/s/ Ronald B. Garelick — Pres.
Policyowner
/s/ Hidden Hills No. Develop. Co.
X /s/ Jennie Stone
/s/ Secretary (Title)
Hidden Hills was not indebted to the Bank. However, Garelick, in his individual capacity, was indebted to the Bank for $70,000, money borrowed to be used for the Hidden Hills project, a land development project for which Garelick, Harris, and one Gary Homes became associated. That debt was paid after Garelick’s death by the policy on his life.
It is undisputed that six lots of land and an insurance policy in the amount of $100,-000 on Garelick’s life were collateral for the $70,000 loan to Garelick. However, it is EFB’s contention that the policy on Harris’ life was also collateral for the loan to Garelick. On the other hand, it is the Bank’s contention that Garelick agreed to furnish insurance on Harris’ life to secure the latter’s line of credit, thus entitling the Bank to satisfaction from the proceeds thereof.
Our analysis begins with the collateral assignment of policy. That agreement, though regular on its face, contains a latent ambiguity. The document purports to collateralize the debt of Hidden Hills. But, as agreed by the parties, Hidden Hills was never indebted to the Bank. EFB argues that, in order to give meaning to the instrument in question and to prevent declaring the particular transaction a nullity, this court should construe Garelick’s signature as given in his individual capacity. See, e.g., Central National Bank of Miami v. Muskat Corporation of America, Inc., 430 So.2d 957 (Fla. 3d DCA 1983); Roy v. Davidson Equipment, Inc., 423 So.2d 496 (Fla. 4th DCA 1982). Such a construction, however, would require this court ignore the plain import of Garelick’s signature in his representative/corporate capacity, as well as the signature of Jennie Stone in her representative/corporate capacity, and the plain language of the instrument itself, which purports to be an assignment from the “undersigned policyholder.” It is undisputed that the policyholder was not Gar-elick but Hidden Hills.
It is the Bank’s position that the collateral assignment of policy should be reformed by deleting the word “undersigned” wherever it is used with reference to the debt collateralized and substituting in its stead the word “insured,” which would refer to Harris. In support of its contention, the Bank offered the affidavits and deposition testimony of two of its officers, Currie and Van Arsdall. The gist of their combined testimony, viewed most favorably to the Bank, was that Harris approached the Bank on Garelick’s behalf for purposes of obtaining a $70,000 loan, which was to be used for a project in which Harris was involved. During the course of negotia *249 tions for the $70,000 loan and because of Harris’ involvement with the Hidden Hills project and the Bank’s knowledge that Gar-elick was Harris’ insurance agent, it was considered an appropriate time to request that Harris’ line of credit be further collat-eralized by insurance on his life, and it was agreed that the required insurance would be provided.
Based upon the foregoing, we conclude that there are material issues of fact which preclude entry of summary judgment. Accordingly, the order is reversed and the cause remanded for further proceedings consistent herewith.
ERVIN, C.J., and BARFIELD, J., concur.
APPENDIX A
[[Image here]]
*250 [[Image here]]

. Forrest Jefferson Harris, Jr. died sometime prior to August 3, 1977, the date his body was discovered.

.The counterclaim alleged that Forrest Jefferson Harris, Jr. was liable to the Bank as guarantor and endorser on notes and mortgages exceeding $200,000.

. On August 4, 1977, Ronald B. Garelick was involved in an aircraft accident, which resulted in his death on August 5, 1977.

. See copy, "Collateral Assignment of Policy,” attached herewith, Appendix A.